**UNITED STATES COURT OF INTERNATIONAL TRADE**

**BEFORE:  THE HONORABLE TIMOTHY C. STANCEU, JUDGE**

| | |
|---|---|
| THE MOSAIC COMPANY, )<br><br>Plaintiff, )<br><br>and )<br><br>OCP S.A., )<br><br>Consolidated Plaintiff,)<br><br>v. )<br><br>UNITED STATES, )<br><br>Defendant, )<br><br>and )<br><br>OCP.S.A., )<br><br>Defendant-Intervenor,)<br><br>and )<br><br>THE MOSAIC COMPANY, )<br><br>Consolidated )<br>Defendant-Intervenor.) | Consol. Case No. 21-00116 |

**PROPOSED REPLY IN SUPPORT OF A STATUTORY INJUNCTION OF OCP S.A.**

The dispute between the parties with respect to the statutory injunction is narrow.  There is no dispute that liquidation of entries of subject merchandise produced/exported by Consolidated Plaintiff and Defendant-Intervenor OCP S.A. ("OCP") already made, as well as entries made through the first period of review, should be enjoined.  In its partial opposition, Defendant the

United States ("the Government") expressly agrees that OCP is entitled to an injunction as to these entries. *See* Gov't's Partial Opp'n to OCP S.A.'s Mot. for Statutory Inj. in No. 21-00218 at 3, No. 21-00116 (Ct. Int'l Trade July 23, 2021), ECF No. 28 ("Gov't's Resp."). The disagreement between the parties, and thus the only issue this Court needs to decide, is whether that injunction should include entries made after the first period of review. OCP respectfully submits that it is entitled to such an injunction thereby ensuring that *all* of its entries are protected from liquidation during the pendency of this litigation.

The Government draws a line in the sand with respect to entries of OCP's merchandise made during the pendency of this litigation, but after the first period of review ending on December 31, 2021. The Government takes the incorrect position that the threat of harm to entries made after December 31, 2021 is insufficient to support a statutory injunction on liquidation of those entries at this time, and as a result, OCP must return to this Court repeatedly, on a piecemeal basis, to seek an injunction for entries made during the pendency of this litigation which occur during subsequent periods of review.

OCP, on the other hand, respectfully submits that it has demonstrated sufficient harm with respect to *all* entries occurring during the pendency of this litigation to support a statutory injunction covering *all* such entries. Under the current circumstances where no administrative review has been conducted under the CVD Order, all of OCP's entries, regardless of the period of review in which they enter, are threatened with the same irreparable harm—automatic liquidation under the CVD Order. Moreover, issuing a single injunction now to cover all of OCP's entries would be consistent with the law, precedent, and this Court's rules which provide a single moment in time—30 days after the filing of a complaint—to seek a statutory injunction as of right.

OCP's reply brief is organized around the four factors to issue a statutory injunction. *First*, OCP demonstrates that, contrary to the Government's contentions, OCP satisfies the irreparable harm standard to support a statutory injunction with respect to *all* of OCP's future entries made during the pendency of this litigation, including entries made after the first period of review. Indeed, the Government's arguments with respect to harm mischaracterize this Court's precedent. *Second*, OCP discusses that neither the Government nor Plaintiff and Consolidated Defendant-Intervenor The Mosaic Company ("Mosaic") meaningfully contend that OCP has failed to demonstrate a likelihood of success on the merits sufficient to support a statutory injunction; OCP has in fact made this demonstration. *Third*, OCP demonstrates that the balance of hardships tips decidedly in OCP's favor because, without an injunction, there is no way to ensure that the status quo is maintained, including with respect to entries made after the first period of review. *Fourth*, and contrary to the Government's assertion, OCP explains that the public interest is best served by ensuring OCP can obtain meaningful judicial review, and avoiding the inefficiencies inherent in the Government's proposed approach of seeking piecemeal injunctions.

## **ARGUMENT**

I.   **OCP Has Demonstrated that It Will Suffer Irreparable Harm—a Presently Existing, Actual Threat of Harm—Absent an Injunction Covering *All* of OCP's Entries Made During the Pendency of this Litigation, Including After the First Period of Review.**

The first factor this Court considers in determining whether to issue a statutory injunction is whether the movant will suffer irreparable harm if a statutory injunction is not granted. Here, OCP will undoubtedly suffer such harm. The Government incorrectly asserts that OCP will not suffer irreparable harm with respect to entries occurring after the first period of review because the threat of liquidation of such entries is too far into the future. However, as explained below, all of OCP's entries are threatened with the same irreparable harm—automatic liquidation under the CVD Order—because no administrative review of the order has been conducted. Moreover, absent

an injunction, OCP suffers irreparable harm because it would be denied meaningful judicial review.  The Government's arguments to the contrary misstate this Court's precedent and mischaracterize OCP's motivation as based on a fear of inattentiveness.  Instead, OCP's request for an injunction covering all entries made during the pendency of this litigation diligently follows the law and rules of this court.  Thus, this Court should find that OCP has demonstrated irreparable harm sufficient to support a statutory injunction covering all of its entries, including entries made after the first period of review.

### A.   OCP Satisfies the Irreparable Harm Standard to Support a Statutory Injunction with Respect to *All* of OCP's Entries Made During the Pendency of this Litigation.

A moving party like OCP can satisfy the irreparable harm standard for a statutory injunction by demonstrating "a viable threat of serious harm which cannot be undone," that is, a "presently existing, actual threat."  *Zenith Radio Corp. v. United States*, 710 F.2d 806, 809 (Fed. Cir. 1983).  OCP meets this standard with respect to all of its entries of subject merchandise including those made after the first period of review.  The Government's attempt to limit the injunction to the first period of review is incorrect because, with respect to liquidation, there is no basis on which to distinguish between entries made during this period and those made in subsequent periods unless and until an administrative review is conducted which has not occurred.

OCP does not believe the facts relevant to its request for an injunction to be disputed: absent an injunction, until such time as this litigation or an administrative review results in the CVD Order being modified, all of OCP's entries of subject merchandise will be subject to the CVD Order and liquidated at the cash deposit rate.  The current cash deposit rate is the 19.97% rate established in the investigation.  *Phosphate Fertilizers from the Kingdom of Morocco and the Russian Federation:  Countervailing Duty Orders*, 86 Fed. Reg. 18,037, 18,038 (Dep't of Commerce Apr. 7, 2021) ("*CVD Order*").

Because no administrative review of the CVD Order has yet been conducted, such automatic liquidation will include not only all past entries, but also all future entries—under the CVD law, all entries of subject merchandise are automatically liquidated at the cash deposit rate unless an administrative review covering such entries is conducted.  *See Mid Continent Steel & Wire, Inc. v. United States*, 427 F. Supp. 3d 1375, 1383 (Ct. Int'l Trade 2020).  Here, the earliest a party could request such a review would be April 2022.  *See* 19 C.F.R. § 351.213(b)(1)-(4) (reviews may be requested during the order's anniversary month); *see also CVD Order*, 86 Fed. Reg. at 18,037.

Accordingly, under the current circumstances where no administrative review has been conducted, by operation of law the status quo would result in the automatic liquidation of all future subject entries, regardless of whether they are made within the first period of review or a subsequent review period.  There is, therefore, a presently existing, actual threat that *all* of OCP's future entries made during the pendency of this litigation will be both subject to the CVD Order, and liquidated at the 19.97% rate, and this threat is in no way limited to entries made during the first period of review.

As OCP explained in its Motion for a Statutory Injunction, OCP intends to demonstrate that the U.S. Department of Commerce ("Commerce") improperly initiated the underlying CVD investigation, thereby eliminating the legal basis for the CVD Order.  OCP's Mot. for Inj. at 10.  Additionally, OCP intends to demonstrate that Commerce erred when it calculated the 19.97% subsidy rate for OCP.  Success on the merits of this argument could result in a zero/*de minimis* CVD rate which would also eliminate the legal basis for the CVD Order.  *Id.*  Thus, OCP intends to demonstrate that none of its entries of subject merchandise should be subject to the CVD Order,

and also that none of these entries should be subject to the 19.97% CVD rate, regardless of whether they have already entered or will enter in the future.

If OCP's litigation is successful in demonstrating that the CVD Order lacks a legal basis, or that the 19.97% rate is inconsistent with law, such automatic liquidation at the cash deposit rate would constitute a significant and irreversible harm to OCP.  *See Mid Continent*, 427 F. Supp. 3d at 1383-84; *Husteel Co. v. United States*, 34 F. Supp. 3d 1355, 1360 (Ct. Int'l Trade 2014).  The Federal Circuit and this Court have found that, in litigation challenging a Commerce final determination under 28 U.S.C. § 1581(c), liquidations cannot be undone because reliquidation is *not* available.  *See, e.g.*, *Zenith*, 710 F.2d at 810;  *J. Conrad Ltd. v. United States*, 457 F. Supp. 3d 1365, 1379 n.15 (Ct. Int'l Trade 2020).  Thus, the presently existing, actual threat that all of OCP's entries will be subject to the CVD Order and automatically liquidated at the cash deposit rate, including entries made after the first period of review, constitutes a serious threat of irreparable harm sufficient to support a statutory injunction.

This Court has held that failing to prevent such irreversible liquidation during the pendency of litigation challenging the legality of the underlying order would deny a party like OCP meaningful judicial review, and this denial causes irreparable harm.  *Wind Tower Trade Coal. v. United States*, 741 F.3d 89, 95 (Fed. Cir. 2014); *Zenith*, 710 F.2d at 810; *Mid Continent*, 427 F. Supp. 3d at 1382; *Husteel*, 34 F. Supp. 3d at 1359-63.  Thus, OCP would be denied meaningful judicial review and irreparably harmed if its entries are irreversibly subject to a CVD Order and liquidated at 19.97% rate during the pendency of this action, which challenges the legal basis of that very CVD Order and that 19.97% rate.  Put differently, OCP would suffer an irreparable harm if it is forced to undertake litigation without the certainty that this Court will be able to provide a complete remedy, because entries are being irreversibly liquidated.

For all of these reasons, and others set forth more fully in its motion, OCP has demonstrated a presently existing, actual threat of irreparable harm more than sufficient to support a statutory injunction covering all of its entries during the pendency of this litigation, including entries made after the first period of review.  OCP respectfully submits that this Court should reject the Government's spurious attempt to limit the requested statutory injunction to entries made during the first period of review and should instead grant OCP's requested injunction.

**B.     The Government Incorrectly Argues that this Court Has Consistently Limited Statutory Injunctions with Respect to Litigation Challenging CVD Investigations to Entries Covered by the First Period of Review.**

The Government claims its position is supported by "court precedent" and "[t]his Court has consistently limited the statutory injunction issued with respect to an investigation to the entries covered by the first administrative review."  Gov't's Resp. at 5 (capitalization modified). This claim mischaracterizes this Court's opinions and is without merit.  There are multiple examples where the Government has consented to broader injunctions and where this Court has entered injunctions that cover all entries made during the pendency of litigation, including over the objections of the Government.

In discussing this Court's opinions purportedly limiting statutory injunctions to the first period of review, the Government fails to cite even one case where this issue was contested and decided by the Court.  Instead, the cases cited by the Government are nearly all based on situations where the Court entered an injunction based on terms agreed to by all parties (pursuant to the Government's position to consent to injunctions limited to the first period of review).[1]   The

---

[1] *See Husteel*, 34 F. Supp. 3d at 1358 ("Defendant consents to the motions."); Order for Statutory Inj. Upon Consent at 1, *Asociacion de Exportadores e Industriales de Aceitunas de Mesa v. United States*, No. 18-00195 (Ct. Int'l Trade Jan. 19, 2021), ECF No. 65 ("The parties in this action agree . . . ."); Order for Statutory Inj. Upon Consent at 1, *PT Kenertec Power Sys. v. United States*, No. 20-03687 (Ct. Int'l Trade Nov. 23, 2020), ECF No. 14 (same).  Although the Government opposed

Government thus merely cites to examples where a plaintiff consented to the terms of the Government's erroneous position.  The Government is incorrect to rely on cases based on the acquiescence of other litigants to its erroneous position as justification for that same position.

Not only does the Government rely on this circular argumentation, it then boldly claims that "OCP has failed to cite facts or case law demonstrating that this case should be treated any differently" than the cases in which the Court issued an injunction limited to the first period of review.  Gov't Resp. at 6.  However, in the decisions of this Court that squarely address the issue—where respondent parties have challenged the Government's refusal to consent to an injunction covering all entries made during the pendency of litigation—this Court has refused to limit the scope of an injunction to the first period of review.  *See, e.g., Mid Continent*, 427 F. Supp. 3d at 1384; Memorandum and Order at 1-2, *CS Wind Vietnam Co. v. United States*, No. 13-00102 (Ct. Int'l Trade May 9, 2017), ECF No. 131.

The Government characterizes its approach of limiting the scope of injunctions to the first period of review as "well-established," but later explains that it has begun to "oppose[] open-ended injunctions" only "*in recent years*."  Gov't Resp. at 9, 12 (emphasis added).  In fact, the history of this issue reveals a well-established pattern directly contrary to the Government's position.

---

the request for an injunction sought by a *domestic producer* challenging the results of an investigation in *American Cast Iron Pipe Co. v. United States*, the domestic producer sought an injunction covering only the first period of review.  Mot. for Preliminary Inj. at 2, *Am. Cast Iron Pipe Co. v. United States*, No. 19-0083 (Ct. Int'l Trade July 29, 2019), ECF No. 10 (requesting an injunction covering merchandise entered only "on or after August 27, 2018 up to and including February 22, 2019, and on or after April 19, 2019 up to and including April 30, 2020").  Furthermore, domestic producers cannot demonstrate irreparable harm resulting from the final determination in an investigation.  *See Comm. Overseeing Action for Lumber Int'l Trade Investigations v. United States*, 393 F. Supp. 3d 1271, 1277-78 (Ct. Int'l Trade 2019).  Accordingly, the Government does not cite to a case where the present issue was contested, and the Court ruled in the Government's favor.  By contrast, the issue was squarely presented in *Mid Continent,* where this Court rejected the Government's position and issued an injunction that covered all entries during the pendency of the litigation.

There are multiple examples in which the Government consented to open-ended injunctions (*i.e.*, covering all entries during the pendency of the litigation) where the plaintiff challenged Commerce's final affirmative determination in an investigation.[2]   As recently as 2015, the Government consented to such an injunction.  *See Zhejiang Native Produce & Animal By-Prods. Imp. & Exp. Corp. v. United States*, 61 F. Supp. 3d 1358, 1362 (Ct. Int'l Trade 2015); Order at 2, *Zhejiang Native Produce & Animal By-Prods. Imp. & Exp. Corp. v. United States*, No. 02-00064 (Ct. Int'l Trade Apr. 27, 2015), ECF No. 52 (granting the plaintiffs requested injunction that covered all entries "entered on or after May 11, 2001," *i.e.*, without a specific end date of coverage).[3]

At most, the cases in which this Court entered injunctions limited to the first period of review based on the consent of the parties show that the Government erroneously changed its position from consenting to full injunctions to consenting to only limited injunctions.  What they fail to show is that such a change in the Government's position was well-reasoned or necessitated by any change in law, or that OCP should be forced to acquiesce to such a change where OCP has

---

[2] *See, e.g.*, Consent Mot. for Prelim. Inj. to Enjoin Liquidation of Entries at 2, *Eurodif S.A. v. United States*, No. 02-00221 (Ct. Int'l Trade June 14, 2002), ECF No. 30 (Government consented to an injunction that covered, *inter alia*, all entries made on or after February 13, 2002, where plaintiff challenged a final determination in a countervailing duty investigation); Consent Mot. for Prelim. Inj. at 2, 5, *Hebei Metals & Mins. Imp. & Exp. Corp. v. United States*, No. 03-00442 (Ct. Int'l Trade Sept. 8, 2003), ECF No. 9 (Government consented to an injunction that covered all entries made on or after December 4, 2002 in investigation litigation); Am. Consent Mot. for Prelim. Inj. at 1-2, *Allied Pac. Food (Dalian) Co. v. United States*, No. 05-00056 (Ct. Int'l Trade Apr. 5, 2005), ECF No. 33 (Government consented to an injunction that covered all entries made on or after July 16, 2004 in investigation litigation).  Moreover, the Court granted the consented-to "and open-ended" injunctions in each of these cases.  *See* Order at 1-2, *Eurodif S.A. v. United States*, No. 02-00221 (Ct. Int'l Trade June 25, 2002), ECF No. 32; Order at 1-2, *Hebei Metals & Mins. Imp. & Exp. Corp. v. United States*, No. 03-00442 (Ct. Int'l Trade Sept. 12, 2003), ECF No. 10; Order at 1-2, *Allied Pac. Food (Dalian) Co. v. United States*, No. 05-00056 (Ct. Int'l Trade Apr. 7, 2005), ECF No. 34.

[3] Although the injunction in *Zhejiang* was entered many years after litigation commenced, the Government could have limited its consent to enjoin entries through the next period of review, but chose not to do so.

satisfied the legal standard required for issuance of the injunction covering all entries during the pendency of this litigation.  While the Government may not want to agree to the injunction OCP seeks, OCP respectfully submits that it has fully demonstrated its entitlement to receive it.

**C.    The Government Incorrectly Argues that the Threat of Liquidation Is Insufficient to Support the Requested Statutory Injunction.**

In seeking to defend its erroneous shift in the type of injunctions it prefers, the Government makes several meritless arguments to claim that the threat of liquidation to OCP's entries is not sufficient to demonstrate irreparable harm to support a statutory injunction.  The Court should reject all of these arguments.  As discussed below, absent an injunction on liquidation, meaningful judicial review is not possible for OCP; the threat of liquidation is sufficiently imminent to support a statutory injunction for entries made after the first period of review; and the potential of suspension of liquidation through the administrative review process does not obviate the need for a statutory injunction covering all entries made during the pendency of this litigation.

*First*, the Government incorrectly argues that this court can provide meaningful judicial review regardless of the liquidation status of any specific set of entries.  Gov't Resp. at 10.  According to the Government, "[r]evocation of this CVD order, which OCP seeks in this case, certainly constitutes a meaningful judicial relief regardless of the liquidation status of any specific set of entries." *Id.*  This claim is plainly incorrect.

As discussed *supra* Section I.A, this Court has found that it lacks the power to reliquidate duties in actions such as this one brought pursuant to 28 U.S.C. § 1581(c).  In other words, such liquidations are irreversible.  Thus, by claiming that judicial review in this action is meaningful "regardless of the liquidation status of any specific set of entries," the Government essentially claims that there is no harm to OCP if the Government irreversibly collects CVD duties on its subject merchandise, notwithstanding that this litigation could determine that the assessment of

such duties was improper and invalidate any legal basis for the Government to collect them.  The law does not provide for such an unfair result.  Indeed, avoiding this result and allowing this Court to provide a complete remedy in this litigation is the purpose of the statutory injunction provision. *See Mid Continent*, 427 F. Supp. 3d at 1384; *see also Wind Tower*, 741 F.3d at 95 (identifying the "cruciality of unliquidated entries for judicial review").

The Government's reliance on *Committee Overseeing Action for Lumber International Trade Investigations v. United States* ("*Lumber*") to argue that liquidation does not constitute irreparable harm is unavailing.  Gov't Resp. at 10.  In *Lumber*, the Court found that liquidation of entries, without more, generally does not constitute irreparable harm in a challenge *brought by a domestic producer* to Commerce's final decision in a CVD proceeding.  393 F. Supp. 3d 1271, 1278 (Ct. Int'l Trade 2019).  The Court explained that the domestic producer could receive complete relief and therefore meaningful judicial review if it prevailed in litigation because "the five companies excluded from the order . . .  would be reinstated in the *CVD Order* with the concomitant collection of cash deposits and suspension of liquidation."  *Id.*

The Court in *Lumber* never suggested that the same reasoning would apply to a foreign producer/exporter such as OCP, and instead explained that a foreign exporter would stand in sharp contrast to a domestic producer and would have a "a direct financial stake in the rate at which entries would be liquidated."  *Id.* at 1279.  Rather than supporting the Government's positon, *Lumber* supports OCP's position that, for a foreign exporter/producer such as OCP, the threat of liquidation of entries does indeed constitute irreparable harm sufficient to support a statutory injunction.

*Second*, the Government asserts that the threat of liquidation to entries occurring after the first period of review are far enough into the future that it does not constitute irreparable harm.

*See* Gov't's Resp. at 10-12.  The Government takes the position that, because it believes "the earliest time the automatic liquidation instructions for entries from the second administrative review may be issued is in May 2023, and much later for entries from subsequent administrative reviews," the threat of liquidation cannot be considered irreparable harm.  *Id.* at 12.  As an initial matter, this argument ignores the harm from a denial of meaningful judicial review if OCP is forced to undertake litigation while remaining uncertain about whether this Court will be able to provide a complete remedy for the wrongs alleged.

In any event, as discussed above at Section I.A., absent an injunction, and under the present circumstances where no administrative review has been requested, *all of OCP's future entries of subject merchandise, including those made after the first period of review*, will be both subject to the CVD Order and automatically liquidated at the 19.97% cash deposit rate.  *See also* OCP's Mot. for Inj. at 7-12.  This is a presently existing actual threat within the meaning of *Zenith*, 710 F.2d at 809.  Furthermore, in *Mid Continent*, this Court explained that the threat of harm flows from the potential lifting of the suspension of liquidation with little notice while judicial review of the investigation remains pending.  427 F. Supp. 3d at 1384.  Indeed, the Government admits that the suspension of liquidation could be lifted "without additional notice," *e.g.*, where no administrative review has been requested.  Gov't's Resp. at 7.

The Government argues that *Mid Continent* and *CS Wind* are inapposite because the injunctions in those cases issued several years after litigation commenced.  *Id.* at 14.  However, both decisions contradict the Government's position:  in both cases, the Court issued injunctions covering all entries made on or after a specific date through the pendency of the litigation, *i.e.*, "open-ended" injunctions.  *See Mid Continent*, 427 F. Supp. 3d at 1386; Memorandum and Order at 2, *CS Wind Viet. Co. v. United States*, No. 13-00102 (Ct. Int'l Trade May 9, 2017), ECF No.

131.  Indeed, in *Mid Continent*, the Court confirmed that a respondent challenging an investigation faces sufficiently imminent irreparable harm *as soon as* the order publishes.  *See* 427 F. Supp. 3d at 1383; *see also Husteel*, 34 F. Supp. 3d at 1361 (issuing an injunction in an action arising from an investigation).

*Third*, the Government incorrectly argues that there is no need for the requested statutory injunction because the administrative review process suspends liquidation.  *See* Gov't's Resp. at 8, 11, 18.  The Government claims entries made following the first period of review will not be subject to immediate liquidation because they "will be administratively suspended until the completion of the review."  *Id.* at 8.  However, no administrative review has been conducted nor could an administrative review be requested until April 2022.  *See* 19 C.F.R. § 351.213(b)(1)-(4). Thus, under present circumstances, all entries under the CVD Order are currently subject to automatic liquidation.  Moreover, even if an administrative review were conducted, there is no guarantee that the suspension resulting from that administrative review would last through the pendency of this litigation.  In *Mid Continent*, this Court rejected a similar argument and expressly acknowledged that the administrative suspension could terminate during the pendency of the judicial review.  427 F. Supp. 3d at 1382-83.  Thus, suspension through the administrative review process is insufficient to protect OCP's interests, and a full injunction is needed now to ensure that OCP receives the "full benefit" of its judicial challenge.  *Husteel*, 34 F. Supp. 3d at 1360.

The Government incorrectly relies on *Fuyao Glass Industrial Group Co. v. United States* to support its position that "the Court should strive to adopt the least restrictive means of achieving the intended purpose for which the injunction is issued."  *See* Gov't's Resp. at 15-17 (first citing *Fuyao I*, 27 C.I.T. 1166, 1169 (2003); then citing *Fuyao II*, 27 C.I.T. 1321, 1324 (2003)).  *Fuyao I* and *Fuyao II* involve the same litigation, wherein the Court did not grant an injunction in *Fuyao*

*I* but then later granted an injunction in *Fuyao II* after a respondent had withdrawn its request for an administrative review, meaning the respondent could no longer be certain that liquidation of its entries would be suspended because of that administrative review and instead, its entries could be subject to automatic liquidation.  27 C.I.T. at 1323-24.  On that basis, the Court found that the respondent "has now established the 'crucial element' of immediate irreparable harm" because the withdrawal of the request meant that "the prospective of immediate irreparable harm is no longer 'speculative.'"  *Id.*  This case supports OCP's position that, because there is no pending administrative review, OCP's entries are subject to automatic liquidation and thus threatened with irreparable harm.  *See Mid Continent*, 427 F. Supp. 3d at 1384.[4]

### D.   The Government Incorrectly Argues that the Harm Caused by Liquidation Would Result from OCP's Inattentiveness.

According to the Government, "OCP's arguments regarding economic harm" concerning improper liquidation of its entries "are based on its own fear that it will be inattentive in the future and fail to amend its injunction" Gov't's Resp. at 13-14.  This argument is too clever by half.  In fact, what the Government mistakenly portrays as OCP's fear of inattentiveness actually reflects OCP's diligence in securing its statutory right to an injunction under the procedure and timing provided for in this Court's rules.

The Government's approach of seeking piecemeal injunctions is nowhere established in this Court's rules.  To the contrary, the rules establish a single moment in time—a 30-day window

---

[4] Moreover, in *Fuyao II*, the Government consented to an injunction covering all entries made during the pendency of litigation, further undermining the Government's position here.  *See* Mot. for Temporary Restraining Order and/or Prelim. Inj. at 1-2, *Fuyao Glass Indus. Grp. Co. v. United States*, No. 02-00282 (Ct. Int'l Trade Aug. 4, 2003), ECF No. 78.  The Government accurately states that the Court limited the injunction to the first period of review in *Fuyao II*.  But, the Court did not provide any meaningful analysis for why it took this approach and, for that reason, the opinion is of little persuasive value.  *See Fuyao II*, 27 C.I.T. at 1325.  Instead, this Court should look to cases such as *Mid Continent*, where the issue of an injunction covering all entries during the pendency of the litigation was fully briefed and such injunctions issued.

after filing of a complaint—in which a party can seek a statutory injunction on liquidation as of right.  Otherwise, the respondent must establish good cause for the injunction.  *See* USCIT R. 56.2(a); *N.M. Garlic Growers Coal. v. United States*, 256 F. Supp. 3d 1373, 1376 (Ct. Int'l Trade 2017); *see also Nexteel Co. v. United States*, 393 F. Supp. 3d 1287, 1291 (Ct. Int'l Trade 2019) ("[T]he purpose of the relevant language in Rule 56.2(a) is to establish a deadline for statutory motions for injunctions, *not define or limit the scope of injunctive relief available*." (emphasis added)).  This rule does not create a different deadline or process in cases challenging investigations, as compared to reviews.  The process the Government proposes would have OCP ignore this deadline in favor of an alternative process seeking piecemeal injunctions, and subjecting itself to the heightened "good cause" standard for untimely motions for a statutory injunction.  *See Husteel*, 34 F. Supp. 3d at 1361 (questioning whether a respondent could demonstrate good cause for seeking an injunction where the need for seeking an injunction in litigation challenging an investigation is likely foreseen at the outset).  OCP rejects the Government's approach, and respectfully insists that it should be permitted to seek within this 30-day window a statutory injunction *as of right* that covers all its entries of subject merchandise during the pendency of this litigation.

The Government is also wrong to claim that OCP would merely need to "update Form 24 to add new dates."  Gov't Resp. at 18.  Instead, the Court's rules would require OCP to demonstrate that the discretionary standard of good cause is met for injunctions requested outside of the 30-day window.  *See* USCIT R. 56.2(a).  OCP should not be subject to this additional process and this Court's discretion in issuing an injunction when the law provides it with a right to a statutory injunction on liquidation of all its entries made during the pendency of this litigation, nor should the Court be required to devote resources to a potentially contested future injunction

15

motion.  OCP's request for an injunction as to all future entries during the pendency of this litigation is ripe now, and OCP has demonstrated the factors warrant issuing it now.  The Government's contrary piecemeal approach would require the expenditure of additional resources by the parties and this Court on an annual basis into the future to reach exactly the same result that could be reached now, in a single order.

For all the reasons articulated above, this Court should reject the Government's arguments and find that OCP has demonstrated that it will suffer irreparable harm sufficient to support a statutory injunction covering all its entries of subject merchandise during the pendency of this litigation, including entries made after the first period of review.

## II.    OCP Has Demonstrated Likelihood of Success on the Merits.

OCP has raised numerous legal challenges to Commerce's final determination, several of which could result in a complete invalidation of the CVD Order, and all of which raise serious and substantial questions about the final determination.  *See* OCP's Mot. for Inj. at 13-15.  The Government does not meaningfully contest OCP's arguments.  *See* Gov't's Resp. at 17.  For its part, Mosaic does nothing to meaningfully refute OCP's contention other than to claim OCP made similar allegations in its Complaint.  *See* Mosaic Co.'s Resp. to OCP S.A.'s Mot. for Inj. in Court No. 21-00218 at 2, No. 21-00116 (Ct. Int'l Trade July 23, 2021), ECF No. 27.  Mosaic does not engage substantively with OCP's arguments, opting instead to raise its merits arguments later in the litigation.  *Id.* (claiming "Mosaic will demonstrate that OCP's claims lack merit in its brief responding to OCP's CIT Rule 56.2 motion for judgment on the agency record").

Neither the Government nor Mosaic contest that the likelihood that a party will succeed on the merits factor is to be judged on a sliding scale:  the greater the irreparable harm, the smaller the demonstration of likelihood of success needs to be.  *See Qingdao Taifa Grp. Co. v. United States*, 581 F.3d 1375, 1378-79 (Fed. Cir. 2009); Gov't's Resp. at 17 (characterizing likelihood of

success as "not determinative"). For the reasons set forth above, OCP has demonstrated a substantial risk of irreparable harm and, accordingly, its burden to show a likelihood of success on the merits is lessened. *See Taifa*, 581 F.3d at 1378-79.

In such cases, it will ordinarily be sufficient that the movant has raised questions which are "serious, substantial, difficult, and doubtful." *See* OCP's Mot. for Inj. at 13 (citing *PPG Indus. Inc. v. United States*, 11 C.I.T. 5, 8 (1987)). In its motion, OCP explained in detail why its complaint contained serious, substantial, difficult and doubtful questions. *See id.* at 13-15. None of the parties have contested that OCP's discussion in its motion of the claims it has raised in this dispute met this standard. Thus, OCP has demonstrated a likelihood of success on the merits sufficient to fully satisfy the Court's standard and support a statutory injunction.

Furthermore, in a similar case considering whether to issue a statutory injunction and no party engaged in the plaintiff's claims to contest that the plaintiff had demonstrated a likelihood of success on the merits, this Court applied an even *lower* standard in evaluating the likelihood of success on the merits. This Court assumed that the presence of close, difficult issues that may be resolved in either party's favor was sufficient to support a statutory injunction. *See Am. Cast Iron Pipe Co. v. United States*, 399 F. Supp. 3d 1362, 1369 (Ct. Int'l Trade 2019) (assuming, where no party supported its claim that it would succeed on the merits, "that this is a normal unfair trade case in which there are close, difficult issues that may be resolved in either party's favor"). Accordingly, and in the alternative, because neither the Government nor Mosaic engaged in the substance of OCP's claims, this Court can accept OCP's showing that it has raised difficult issues that may be resolved in either party's favor as sufficient to support a statutory injunction in this action.

**III.    OCP Has Demonstrated that the Balance of Hardships Tip in Its Favor.**

The significant hardship OCP would face in the event it is denied an injunction manifestly outweighs any minor inconvenience delayed liquidation may impose on the United States.  *See* OCP's Mot. for Inj. at 15.  Because this court has recognized that it cannot order reliquidation in an action such as this, pursuant to 28 U.S.C. § 1581(c), OCP would be permanently deprived of the opportunity to seek meaningful judicial review without an injunction.  In the event that OCP is successful in demonstrating that no CVDs should apply to its entries or that the 19.97% rate to which all its future entries are now subject is contrary to law, there would be no manner in which the court could fashion a remedy with respect to all entries liquidated during the pendency of this litigation.  *See Mid Continen*t, 427 F. Supp. 3d at 1382.  The Government, on the other hand, faces no hardship from an injunction covering OCP's entries, because the injunction would not prevent the final assessment of CVD duties at the conclusion of the litigation.  *Union Steel v. United States*, 704 F. Supp. 2d 1348, 1350 (Ct. Int'l Trade 2010) (finding the Government would suffer "no hardship").  Indeed, the Government's promise to continually consent to injunctions throughout the course of this litigation undermines any claim that the balance of hardships tips in the Government's favor and against issuing an injunction.

The Government incorrectly asserts that the balance of hardships does not weigh in OCP's favor.  First, the Government suggests that OCP would not face any harm if an injunction with a specific end date correlating with the first period of review were to issue.  *See* Gov't's Resp. at 3.  The Government later concludes that "a broader injunction covering future entries is not necessary to maintain the status quo, because the entries at issue remain administratively suspended and are not in any danger of being liquidated."  *See id.* at 18.  As noted *supra* Section I.A, this argument is incorrect because no administrative review has been requested, meaning that all of OCP's entries, including entries made after the first period of review, are currently subject to automatic

liquidation at the cash deposit rate.  Moreover, this argument has already been rejected by the Court for mischaracterizing the harm a limited injunction presents.  In *Mid Continent*, the Court explained that the Government's request for an injunction with a specific end date failed to account for the threat of harm that flows from the fact that the suspensions of liquidation may be lifted with little notice while judicial review of the investigation determination remains pending.  *See* 427 F. Supp. 3d at 1383-84.  Thus, the Court explicitly disagreed with the Government's argument that an injunction covering all entries during the pendency of litigation was unnecessary to "maintain the status quo."  *See id*. at 1385 n.12.

Second, the Government makes an oblique argument that an injunction covering entries made after the first period of review "could hamper Commerce's ability to perform its statutory mandate and unnecessarily interfere with matters that are within the province of the Executive Branch."  *See* Gov't's Resp. at 19.  These assertions lack specificity and merit.  The Government fails to provide any explanation of how abiding by an injunction ordered by this Court, acting under the explicit authorization of Congress, would hamper such functions.  *See Mid Continen*t, 427 F. Supp. 3d at n.12 ("Congress specifically provided for injunctions to protect against liquidation in 19 U.S.C. § 1516a(c).  The harm that flows from liquidation is irreparable; there seems to be no harm at all to the government or domestic parties stemming from an injunction on liquidation; and, ultimately, ensuring duties are imposed only when warranted is within the public's interest.").  Moreover, that the Government has indicated it would consent to future extensions of injunctions against liquidation in this litigation belies its claims that the issuance of a broader injunction now would hamper Commerce's ability to perform its functions.  *See* Gov't's Resp. at 8-9.  Thus, the balance of hardships tips overwhelmingly in OCP's favor and supports issuing an injunction that covers all of OCP's entries made during the pendency of this litigation.

**IV.     OCP Has Demonstrated that the Public Interest Favors an Injunction that Covers All of OCP's Entries.**

Issuing a statutory injunction protecting all of OCP's entries from liquidation pending the resolution of this litigation serves the public interest by ensuring Commerce complies with the law in liquidating OCP's entries, and that OCP is allowed to seek the meaningful judicial review to which it is entitled.  *See* OCP's Mot. for Inj. at 17.  The Government argues that OCP is already engaged in judicial review which is not threatened by the imposition of an injunction with a specific end date because OCP may petition this Court for an "extension" of the injunction as needed.  Gov't's Resp. at 19.  As noted *supra* Section I.D, this argument ignores that OCP would not be seeking an injunction as of right under the Government's piecemeal approach, but instead would have to brief the further injunction based on a good cause standard that would require additional evaluation by this Court.  The public interest is not served by requiring this Court to resolve, year after year, whether OCP is entitled to an injunction based on good cause, particularly where Congress intended OCP to have a right to an injunction in the first instance.  Indeed, such an approach wastes judicial resources and is thus contrary to the public interest.

Additionally, the Government asserts that "no valid public interest is served by enjoining the liquidation of future entries that are not subject to liquidation in the first place."  Gov't's Resp. at 19.  The Government does not explain what it means by "subject to liquidation" or how entries made during the first period of review are "subject to liquidation" in a manner different from those made in subsequent periods such that it would be appropriate to consent to an injunction covering the first period of review entries but not later entries.  Instead, no administrative review has been conducted under the CVD Order, and thus under these current circumstances, all of OCP's entries over all of the review periods are threatened with the exact same liquidation—automatic liquidation at the cash deposit rate.

## <u>CONCLUSION</u>

For these reasons, OCP has demonstrated that the four factors for entering a statutory injunction have been met with respect to *all* of its entries of subject merchandise during the pendency of this litigation.  OCP respectfully requests that the Court enter the proposed order enjoining liquidation of all of OCP's entries subject to the CVD Order during the pendency of this litigation including appeals.

Respectfully submitted,

/s/ William R. Isasi
William R. Isasi
Alexander D. Chinoy
Rishi R. Gupta

**COVINGTON & BURLING LLP**
One CityCenter
850 Tenth Street, N.W.
Washington, D.C. 20001-4956

*Counsel to OCP S.A.*

Dated:  August 4, 2021

## **CERTIFICATE OF COMPLIANCE**

The undersigned hereby certifies that the attached Proposed Reply in Support of a

Statutory Injunction of OCP S.A., filed August 4, 2021, contains 6,904 words, including

footnotes, and excluding this certificate and counsel's signature block, according to the word

count function of the word-processing system used to prepare this brief, and therefore complies

with the maximum 7,000 word count limitation for reply briefs set forth in the Court's Standard

Chambers Procedures.


/s/ William R. Isasi
William R. Isasi