Slip Op. No. 21-134

UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| **THE MOSAIC COMPANY,** et al., | |
| Plaintiffs, | |
| v. | |
| **UNITED STATES,** | Before: Timothy C. Stanceu, Judge |
| Defendant, | Consol. Court No. 21-00116 |
| and | |
| **OCP, S.A.,** et al., | |
| Defendant-intervenors. | |

OPINION AND ORDER

[Granting motion of plaintiff OCP, S.A. and enjoining the liquidation of certain entries of merchandise subject to a countervailing duty order]

Dated: October 4, 2021

*Stephanie E. Hartmann*, Wilmer, Cutler, Pickering, Hale & Dorr, LLP, of Washington, D.C., for plaintiff and defendant-intervenor The Mosaic Company. With her on the motions were *David J. Ross*, *Patrick J. McLain*, and *Eliot Kim*.

*L. Misha Preheim*, Assistant Director, U.S. Department of Justice, of Washington, D.C., for defendant. With him on the motions were *Brian M. Boynton*, Acting Assistant Attorney General, *Jeanne E. Davidson*, Director, and *Ebonie I. Branch*, Trial Attorney. Of counsel on the motions was *Mykhaylo Alexander Gryzlov*, U.S. Department of Commerce, Office of Chief Counsel for Trade Enforcement and Compliance, of Washington, D.C.

*William R. Isasi*, Covington & Burling LLP, of Washington D.C., for plaintiff and defendant-intervenor OCP, S.A.  With him on the motions were *Alexander D. Chinoy* and *Rishi R. Gupta*.

Stanceu, Judge.  Plaintiff OCP S.A. ("OCP"), a Moroccan producer and exporter of phosphate fertilizers, brought an action, now consolidated, to contest a final affirmative determination of the U.S. International Trade Administration, U.S. Department of Commerce ("Commerce" or the "Department") in a countervailing duty ("CVD") investigation of phosphate fertilizers from Morocco.  Before the court is OCP's motion for a court order enjoining the liquidation of certain entries of phosphate fertilizers produced or exported by OCP that are subject to the countervailing duty order resulting from the Department's investigation (the "CVD Order").  Mot. for a Statutory Inj. of OCP S.A. (Ct. No. 21-00218) (July 2, 2021), ECF No. 20 ("OCP's Mot.").  OCP seeks an injunction that would prohibit the liquidation of all such entries throughout the pendency of this litigation, including appeals.

Defendant United States, while indicating it would consent to relief more limited in scope than that sought by OCP, opposes OCP's motion, characterizing it as seeking an "overbroad and open-ended injunction."[1]  Gov't Partial Opp'n to OCP S.A.'s Mot.

---

[1] Plaintiff and defendant-intervenor The Mosaic Company takes no position on OCP's motion and does not opine on the issue of the scope of any injunction against liquidation of OCP's entries.  The Mosaic Company's Resp. to OCP S.A.'s Mot. for Statutory Inj. in Ct. No. 21-00218 (July 23, 2021), ECF No. 27.

for Statutory Inj. in Case No. 21-00218 2 (July 23, 2021), ECF No. 28 ("Def.'s Opp'n").

Defendant argues that any injunction the court orders should not apply to entries made

after December 31, 2021.  *Id.* at 2–3.

　　Also before the court is OCP's motion to file a reply to defendant's opposition to

its motion.  Mot. for Leave to File a Reply in Supp. of a Statutory Inj. of OCP S.A.

(Aug. 4, 2021), ECF No. 29; Proposed Reply in Supp. of a Statutory Inj. of OCP S.A.

(Aug. 4, 2021), ECF No. 29-1 ("OCP's Reply").

　　The court grants OCP's motion to file a reply and enters an injunction according

to the terms sought by OCP.  The court rejects defendant's position that any injunction

entered in this litigation should be of a more limited scope.

## I. BACKGROUND

　　The contested agency determination is *Phosphate Fertilizers From the Kingdom of*

*Morocco: Final Affirmative Countervailing Duty Determination*, 86 Fed. Reg. 9,482 (Int'l

Trade Admin. Feb. 16, 2021) (the "*Final Determination*").  This determination culminated

in the Department's issuance of the CVD Order published as *Phosphate Fertilizers From*

*the Kingdom of Morocco and the Russian Federation: Countervailing Duty Orders*, 86 Fed.

Reg. 18,037 (Int'l Trade Admin. Apr. 7, 2021).

　　OCP brought an action to contest various aspects of the contested determination,

alleging, *inter alia*, that the investigation was unlawfully initiated and that the CVD

Order is invalid as a result.  Compl. (Ct. No. 21-00218) (June 4, 2021), ECF No. 8.  The

court consolidated this action with another action contesting the same determination,

brought by The Mosaic Company, a domestic producer of phosphate fertilizers.  Order

(July 8, 2021), ECF No. 26.  The Mosaic Company was the petitioner in the Department's

countervailing duty investigation.  *See Phosphate Fertilizers From the Kingdom of Morocco*

*and the Russian Federation: Initiation of Countervailing Duty Investigations*, 85 Fed. Reg.

44,505, 44,505 (Int'l Trade Admin. July 23, 2020).  As each plaintiff intervened as of right

in the action brought by the other plaintiff, both are defendant-intervenors in this

consolidated action.

## II. DISCUSSION

Section 516A(c)(2) of the Tariff Act of 1930 provides, in pertinent part, that this

Court "may enjoin the liquidation of some or all entries of merchandise covered by a

determination of . . . the administering authority [i.e., Commerce], upon a request by an

interested party for such relief and a proper showing that the requested relief should be

granted under the circumstances."  19 U.S.C. § 1516a(c)(2).[2]  The purpose of an

injunction entered under § 1516a(c)(2) (sometimes described as a "statutory" injunction)

is to preserve the court's ability to provide relief, should the movant prevail on the

---

[2] Unless otherwise indicated, all statutory citations are to the 2018 edition of the
United States Code.

merits.  *See Ugine & Alz Belg. v. United States*, 452 F.3d 1289, 1297 (Fed. Cir. 2006).

Absent an injunction in some form, the attachment of finality to the liquidation of the

"entries of merchandise covered by" the contested determination, 19 U.S.C.

§ 1516a(c)(2), potentially places those entries beyond the reach of a court-ordered

remedy imposed at the conclusion of the litigation and may deny the plaintiff the

opportunity to obtain meaningful judicial review of the contested agency action.  *See*

*Zenith Radio Corp. v. United States*, 710 F.2d 806, 810 (Fed. Cir. 1983).

In ruling on motions for statutory injunctions under § 1516a(c)(2), this Court and

the Court of Appeals for the Federal Circuit have applied the four factors governing

decisions on motions seeking preliminary injunctions: whether the movant will be

irreparably harmed in the absence of relief, whether the movant is likely to succeed on

the merits, whether the balance of hardships tips in the movant's favor, and where the

public interest lies.  *See*, *e.g.*, *Sumecht NA, Inc. v. United States*, 923 F.3d 1340, 1345 (Fed.

Cir. 2019), *Ugine*, 452 F.3d at 1292–93.

OCP seeks an order that would enjoin liquidation of all consumption entries of

merchandise produced or exported by OCP and subject to the CVD Order (the "subject

merchandise") and that would remain in effect so as to apply to all entries made

throughout the pendency of this litigation, including appeals.  OCP's Mot. 2.  While not

conceding that OCP has shown a likelihood of success on the merits, defendant does

not oppose in principle an injunction to prevent the liquidation of entries of OCP's

merchandise.  Def.'s Opp'n 2–3.  Defendant advocates that any such injunction should

apply only to entries made prior to December 31, 2021, the date that would correspond

to the end of the period of review for the first administrative review of the CVD Order,

should such a review occur.  *Id.*

### A. Irreparable Harm

OCP seeks an injunction "protecting *all* of its entries of merchandise subject to

the CVD order from liquidation (*i.e.*, past, present, and future entries) until a final and

conclusive court decision has been issued in this litigation."  OCP's Mot. 4 (footnote

omitted) (emphasis in original).  Defendant informs the court that it would consent to

an injunction "covering OCP's unliquidated entries through the end of the first

administrative review period" of the CVD Order that issued from the contested

determination.  Def.'s Opp'n 2.  In opposing an injunction applying to entries made

after the end of this calendar year, defendant argues, *inter alia*, that "OCP has not

alleged sufficient facts demonstrating that it will suffer irreparable harm from a

statutory injunction that has a specific end date of December 31, 2021, which is the date

that corresponds to the end of the period of review for the first administrative review."

*Id.* at 3.

The end date applying to the scope of the injunction is the only issue on which

the parties disagree.  OCP and defendant concur in an injunction against liquidation

that would apply to phosphate fertilizers from Morocco produced or exported by OCP

that were entered, or withdrawn from warehouse, for consumption, beginning on

November 30, 2020, the date of publication of the Department's preliminary affirmative

CVD determination.  OCP's Mot., Proposed Order 2; Def.'s Opp'n 2–3; *see Phosphate*

*Fertilizers From the Kingdom of Morocco: Preliminary Affirmative Countervailing Duty*

*Determination*, 85 Fed. Reg. 76,522 (Int'l Trade Admin. Nov. 30, 2020).  Both also agree

that an injunction against liquidation should exclude entries made during the "gap

period" of March 30, 2021, the day after the final day of provisional measures, and

April 4, 2021, the day prior to the publication of the final affirmative determination of

the U.S. International Trade Commission, OCP's Mot., Proposed Order 2; Def.'s

Opp'n 3, as these entries are not subject to the CVD Order.

OCP argues that absent an injunction applying to entries made after the end of

this year, and continuing for all such entries occurring during the pendency of this

litigation, entries of its merchandise that are the subject of this litigation potentially will

liquidate at the cash deposit rate of 19.97% rather than according to the final judicial

decision in this case.  OCP's Mot. 8.  While acknowledging that the first administrative

review of the CVD order could alter this result, OCP argues that "[b]ecause no

administrative review of the CVD Order has yet been conducted, such automatic

liquidation will include not only all past entries, but also all future entries—under the

CVD law, all entries of subject merchandise are automatically liquidated at the cash

deposit rate unless an administrative review covering such entries is conducted."

OCP's Reply 5 (citing *Mid Continent Steel & Wire, Inc. v. United States*, 44 CIT __, __, 427

F. Supp. 3d 1375, 1383 (2020) ("*Mid Continent*")).  Pointing out that no party could

request a review of the CVD Order until April of next year, OCP argues that at present,

no review having been conducted, "by operation of law the status quo would result in

the automatic liquidation of all future subject entries, regardless of whether they are

made within the first period of review or a subsequent review period." *Id.* By OCP's

logic, "[t]here is, therefore, a presently existing, actual threat that *all* of OCP's future

entries made during the pendency of this litigation will be both subject to the CVD

Order, and liquidated at the 19.97% rate, and this threat is in no way limited to entries

made during the first period of review." *Id.* (emphasis in original).

     In its counterargument, the government contends that "an injunction is an

'extraordinary remedy.'" Def.'s Opp'n 15 (quoting *Winter v. Nat. Res. Def. Council, Inc.*,

555 U.S. 7, 22 (2008)).  This is an incorrect statement of the law as it applies to this case.

*Winter* involved a preliminary injunction, not a "statutory" injunction against

liquidation issued under 19 U.S.C. § 1516a(c)(2).  Injunctions under this statute are not

"extraordinary" and are granted in the ordinary course in cases brought under

19 U.S.C. § 1516a.  *See Husteel Co., Ltd. v. United States*, 38 CIT __, __, 34 F. Supp. 3d 1355,

1359 (2014) ("Because of the unique nature of antidumping and countervailing duty

challenges, the court routinely enjoins liquidation to prevent irreparable harm to a party

challenging the antidumping or countervailing duty rate." (citing *Wind Tower Trade*

*Coal. v. United States*, 741 F.3d 89, 95 (Fed. Cir. 2014))).

Under the government's formulation, the injunction against liquidation of entries

would not apply to entries made after the end of this calendar year—i.e., less than three

months from now.  Defendant's position is that "the entries at issue are not subject to

liquidation in the near future, and, consequently, OCP is unable to establish that it will

suffer immediate harm if the Court declines to grant its request for injunctive relief."

Def.'s Opp'n 7.  Defendant argues that the likelihood of future administrative reviews

of the CVD Order are high "[b]ecause OCP is the only known Moroccan producer of the

subject merchandise."  *Id*. at 8.  It argues, further, that "[f]or companies for which no

review is requested, the earliest time the automatic liquidation instructions for entries

that are made after December 31, 2021 may be issued is in May 2023" and that "if this

litigation is not resolved by the time some of these future entries could conceivably be

subject to liquidation, when appropriate, the Government will consent to modifying the

preliminary injunction to cover such entries that were made during the period of the

second administrative review." *Id.* at 8–9.

Defendant focuses its argument principally on the prospect of future

administrative reviews and the resulting delay in liquidation of affected entries. The

court considers it significant that the decision contested here is the final agency

determination in the CVD *investigation*, not an administrative review of the CVD Order.

This Court previously has rejected arguments similar to those the government advances

in its opposition to OCP's motion. "The danger of liquidation pending judicial review

of an *investigation* constitutes irreparable harm." *Mid Continent*, 44 CIT at __, 427 F.

Supp. 3d at 1382 (emphasis added). In *Mid Continent*, this Court, noting that not all

entities seek administrative reviews (citing *Husteel*, 38 CIT at __, 34 F. Supp. 3d at 1360),

reasoned that the danger of liquidation became sufficiently imminent when the

antidumping duty order at issue in that litigation was published. *Id.* at __, 427 F. Supp.

3d at 1383. "Securing the full benefits of judicial review of the *Final Results* should not

require participation in each AR [administrative review]." *Id.* at __, 427 F. Supp. 3d at

1384.

In opposing OCP's motion, defendant promises that "if appropriate" it will

consent to modifying an injunction to cover future entries. Def.'s Reply 18. This Court

has rejected a similar argument. *Mid Continent*, 44 CIT at __, 427 F. Supp. 3d at 1384

("True, a respondent could seek an injunction against liquidation after it decides not to seek judicial review of an AR, but the court fails to see why doing so should be required.  The potential harm flows from the results of the investigation, not from the decision to forgo judicial review of an AR.").  The *Mid Continent* opinion concluded that "an injunction against liquidation should apply to all entries from AR 1 going forward, until conclusion of the dispute." *Id.* at __, 427 F. Supp. 3d at 1384.

The court agrees with the reasoning of *Mid Continent*, and the principles upon which it is based, as they apply to the issue of irreparable harm presented by OCP's motion for a statutory injunction.  OCP has made a sufficient showing that it will suffer irreparable harm should the court enter an injunction that does not apply to entries affected by this litigation and occurring after the end of this calendar year.  That harm already exists, having arisen upon the publication of the CVD Order.

## B. Likelihood of Success on the Merits

OCP has raised serious and substantial questions concerning the *Final Determination*.  While not conceding that OCP is likely to succeed on the merits, the government has made no argument that any of the claims OCP raises are dubious.  OCP's showing is sufficient for the purpose of obtaining a statutory injunction.  *See Mid Continent*, 44 CIT at __, 427 F. Supp. 3d at 1385; *Husteel*, 38 CIT at __, 34 F. Supp. 3d at 1362.  The "likelihood of success" requirement is, therefore, satisfied.

### C. Balance of the Hardships

Granting the injunction motion would prevent the hardship to OCP that

potentially will be caused by the liquidation of entries of its merchandise during the

pendency of the litigation.  The court perceives no hardship to the government from the

granting of this motion.

Defendant argues that "if the Court were to grant OCP's broad request for

injunctive relief, it could hamper Commerce's ability to perform its statutory mandate

and unnecessarily interfere with matters that are within the province of the Executive

Branch."  Def.'s Opp'n 19 (citing *Advanced Tech. & Materials Co. v. United States*, 37 CIT

454 (2013)).  Defendant has not demonstrated or even explained how the injunction

sought by OCP would interfere with the government's ability to perform its statutory

mandate.  The case it cites, which grants a statutory injunction in favor of a domestic

interested party, concluded as to the balance of hardships that "[t]he defendant [United

States] will suffer no significant hardship as a result of this court['s] granting the

requested injunction against liquidation" which at most would be an inconvenience to

the government.  *Advanced Tech.*, 37 CIT at 459 (citations omitted).

Defendant also argues that the authority of the Executive Branch to "speak[] on

behalf of the U.S. to the international community on matters of trade and commerce"

would be "prematurely hampered in this case through the imposition of broad

injunctive relief."  Def.'s Opp'n 19 (quoting *U.S. Steel Corp. v. United States*, 33 CIT 984,

995 (2009), *aff'd*, 621 F.3d 1351 (Fed. Cir. 2010)).  Again, defendant makes an

unsupported and unexplained argument.  *U.S. Steel Corp.*, which sustained an

administrative decision of Commerce on "zeroing," contains a sentence explaining that

the deference accorded to an interpretation by Commerce of an ambiguous

antidumping statute "is at its highest when that agency acts . . . to harmonize U.S.

practices with international obligations" and "allows the Executive Branch to speak on

behalf of the U.S. to the international community on matters of trade and commerce."

*U.S. Steel Corp.*, 33 CIT at 995.  The decision is irrelevant to the issues now before the

court, and it lends no support to the notion that the government will suffer harm from

the granting of the instant motion for an injunction under the authority Congress

expressly provided in 19 U.S.C. § 1516a(c)(2).

In summary, OCP has shown that the balance of the hardships favors the

granting of its motion.  The arguments defendant makes to the contrary are

unexplained, unsupported, and dependent on citations to inapposite court decisions.

Considered on the whole, they are meritless.

### D. The Public Interest

The public interest is served by preserving a plaintiff's right to meaningful

judicial review of an agency action by means of a statutory injunction when the

situation so warrants.  Defendant argues that "OCP is engaged in meaningful judicial

review, and that right is not threatened by the imposition of an injunction with a

specific end date, as OCP is free to petition this Court for an extension of the injunction,

if or when necessary."  Def.'s Opp'n 19.  The government fails to explain why OCP,

having contested the administrative decision resulting in the CVD Order itself, should

have to go to such lengths or why the temporal limitation it seeks is necessary to the

resolution of the issues before the court.  OCP has met its burden of showing that the

injunction it seeks is in the public interest.

### III.  CONCLUSION AND ORDER

For the reasons discussed in the foregoing, the court concludes that OCP's

motion for a statutory injunction should be granted.  Therefore, in consideration of the

Motion for a Statutory Injunction filed by OCP S.A., and all other papers and

proceedings herein, and upon due deliberation, it is hereby

**ORDERED** that OCP's Motion for Leave to File a Reply in Support of a Statutory
Injunction (Aug. 4, 2021), ECF No. 29, be, and hereby is, granted, and OCP's Proposed
Reply in Support of a Statutory Injunction (Aug. 4, 2021), ECF No. 29-1 is accepted for
docketing as of the date of this Order; it is further

**ORDERED** that OCP's Motion for a Statutory Injunction (Ct. No. 21-00218)
(July 2, 2021), ECF No. 20, be, and hereby is, granted; it is further

**ORDERED** that defendant, the United States, together with its delegates,
officers, agents, and servants, including employees of U.S. Customs and Border
Protection and the U.S. Department of Commerce, is enjoined during the pendency of
this litigation, including any appeals, from issuing instructions to liquidate or making

or permitting liquidation of any unliquidated entries of phosphate fertilizers from the Kingdom of Morocco:

    (1)  that were produced and/or exported by OCP S.A.;

    (2)  that were the subject of the U.S. Department of Commerce's final determination in *Phosphate Fertilizers From the Kingdom of Morocco: Final Affirmative Countervailing Duty Determination*, 86 Fed. Reg. 9,482 (Int'l Trade Admin. Feb. 16, 2021), and *Phosphate Fertilizers From the Kingdom of Morocco and the Russian Federation; Countervailing Duty Orders*, 86 Fed. Reg. 18,037 (Int'l Trade Admin Apr. 7, 2021); and

    (3)  that were entered, or withdrawn from warehouse, for consumption, on or after November 30, 2020, excluding any merchandise entered, or withdrawn from warehouse, for consumption, on March 30, 2021 through April 4, 2021;

it is further

     **ORDERED** that the entries subject to this injunction shall be liquidated in accordance with the final and conclusive court decision in this action, including all appeals and remand proceedings, as provided in 19 U.S.C. § 1516a(e); and it is further

     **ORDERED** that any entries inadvertently liquidated after this Order is signed but before this injunction is fully implemented by U.S. Customs and Border Protection shall be promptly returned to unliquidated status and suspended in accordance with this injunction.

                      /s/ Timothy C. Stanceu
                      Timothy C. Stanceu, Judge

Dated: October 4, 2021
     New York, New York