THE UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE:  THE HONORABLE TIMOTHY C. STANCEU, SENIOR JUDGE

| | |
|---|---|
| THE MOSAIC COMPANY,<br><br>    Plaintiff,<br><br>  v.<br><br>THE UNITED STATES,<br><br>    Defendant,<br><br>  and<br><br>OCP, S.A.,<br><br>    Defendant-Intervenor. | Consol. Court No. 21-00116 |

**DEFENDANT'S SUPPLEMENTAL BRIEF
IN RESPONSE TO COURT'S APRIL 21, 2026 BENCH ORDER**

BRETT A. SHUMATE
ASSISTANT ATTORNEY GENERAL

PATRICIA M. McCARTHY
Director

TARA K. HOGAN
Assistant Director

OF COUNSEL

LESLIE M. LEWIS
Attorney
Office of the Chief Counsel for Trade
 Enforcement & Compliance
U.S. Department of Commerce

KRISTIN E. OLSON
Trial Attorney
U.S. Department of Justice
Civil Division
Commercial Litigation Branch
P.O. Box 480 | Ben Franklin Station
Washington, D.C. 20044
Tel: (202) 307-6299
kristin.olson@usdoj.gov

*Attorneys for the United States*

TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................................iii

ARGUMENT..................................................................................................................... 2

     I.     Commerce's Tier-Three Comparative Benefit Analysis For The Provision Of Phosphate Mining Rights For Less-Than-Adequate-Remuneration (LTAR) Program Is Based On Substantial Evidence And In Accordance With Law ................................................................................................... 2

          A.     Commerce's Tier-Three Benefit Analysis For The Provision Of Phosphate Mining Rights For LTAR Program Is Consistent With Law ................................................................................................... 3

               1.     Commerce Reasonably Selected A Tier-Three World Market Benchmark For Phosphate Rock From Record Information ................................................. 6

               2.     Commerce Reasonably Built Up OCP's Costs To An OCP Price For Its Comparative Benefit Analysis With The World Market Benchmark Price ..................................... 8

          B.     Commerce's Tier-Three Benefit Analysis Is Reasonable......................... 10

     II.     The Court Should Sustain Commerce's Methodology ........................................ 12

CONCLUSION................................................................................................................. 13

# TABLE OF AUTHORITIES

Page(s)

Cases

*Brit. Steel PLC v. United States*,
127 F.3d 1471 (Fed. Cir. 1997) ........................................................................ 12

*Cleo Inc. v. United States*,
501 F.3d 1291 (Fed. Cir. 2007) ........................................................................ 12

*Essar Steel Ltd. v. United States*,
678 F.3d 1268 (Fed. Cir. 2012) .......................................................................... 4

*Jiangsu Alcha Aluminum Co. v. United States*,
712 F. Supp. 3d 1376 (Ct. Int'l Trade 2024) ................................................. 7, 10

*Mosaic Co. v. United States*,
659 F. Supp. 3d 1285 (Ct. Int'l Trade 2023) ................................................... 10

*POSCO v. United States*,
977 F.3d 1369 (Fed. Cir. 2020) .......................................................................... 4

*QVD Food Co. v. United States*,
658 F.3d 1318 (Fed. Cir. 2011) ..................................................................... 6, 10

*Kaptan Demir Çelik Endustrisi ve Ticaret AŞ*,
803 F. Supp. 3d 1276 (Ct. Int'l Trade 2025) ..................................................... 6

*Yama Ribbons v. United States*,
865 F. Supp. 2d 1294 (Ct. Int'l Trade 2012) ...................................................... 7

Statutes

19 U.S.C. § 1677(5)(A)-(B) ................................................................................. 3

19 U.S.C. § 1677(5)(E) ........................................................................................ 3

Regulations

19 C.F.R. § 351.301 .............................................................................................. 7

19 C.F.R. § 351.511 ..................................................................... 3, 4, 5, 6, 9, 11, 12

Administrative Materials

*Cold-Rolled Steel from Russia: Final Affirmative Countervailing Duty Determination*,
81 Fed. Reg. 49,935 (Dep't of Commerce July 29, 2016) ................................. 2, 6

*Countervailing Duties,*
    63 Fed. Reg. 65,348, 65,378 (Dep't of Commerce Nov. 25, 1998) ........................................ 4, 5

*Silicon Metal from Australia: Final Affirmative Countervailing Duty Determination,*
    83 Fed. Reg. 9,834 (Dep't of Commerce March 8, 2018) ............................................................ 6

Pursuant to the Court's order issued from the bench during oral argument on April 21, 2026, defendant, the United States, respectfully submits this response to the Court's request for supplemental briefing.  In this response, defendant addresses: (1) the Court's concerns with the tier-three benefit analysis which Commerce applied to the provision of phosphate mining rights for less-than-adequate remuneration (LTAR) program; and (2) the Court's request for a proposal on how to bring this matter to an expeditious conclusion, based on the current record.

First, as explained below, the tier-three benefit analysis which Commerce applied to the provision of phosphate mining rights for LTAR program is supported by substantial evidence and in accordance with law.  Commerce reasonably built up OCP's costs to develop an OCP *price*, in order to conduct an apples-to-apples comparison with the world market benchmark *price*.  Alternative comparative benefit methodology was not available because parties, who carry the burden of populating the record with benchmark information, did not place world cost or world profit data on the record.  Nonetheless, Commerce's comparison of the world benchmark price and OCP's price is reasonable in light of record information and results in a cost comparison under tier-three because both prices include costs and profit specific to the particular production experiences, even if the precise proportion of world cost and world profit is unavailable on the record.

Second, the Court should sustain the tier-three benefit analysis Commerce applied to the provision of phosphate mining rights for LTAR because the agency reasonably compared a world market figure with an OCP figure—both of which include costs specific to the particular production experiences and derive from record information.  OCP received exclusive phosphate mining rights from the government of Morocco (GOM) for *free*, and Commerce applied a reasonable methodology based on available record information to estimate the benefit amount

1

OCP received from the free, exclusive right to mine phosphate rock in Morocco. Accordingly, the United States respectfully proposes that the Court sustain Commerce's methodology not only because doing so provides the most expeditious conclusion of this matter based on the current record, but also because Commerce's methodology is reasonably drawn from substantial record evidence and in accordance with law.

**ARGUMENT**

**I.      Commerce's Tier-Three Comparative Benefit Analysis For The Provision Of Phosphate Mining Rights For Less-Than-Adequate-Remuneration (LTAR) Program Is Based On Substantial Evidence And In Accordance With Law**

In the remand redetermination, as in the investigation, Commerce determined OCP's benefit for the provision of phosphate mining rights for LTAR program using a tier-three comparative benefit analysis. *See* Final Results of Remand Redetermination Pursuant to Second Court Remand (ECF Nos. 147, 148) (April 29, 2025) (*Second Remand Redetermination*) at 8; Preliminary Decision Memorandum (PDM) (P.R. 386) at 11-12; *Phosphate Fertilizers from the Kingdom of Morocco: Final Affirmative CVD Determination*, 86 Fed. Reg. 9,482 (Dep't of Commerce Feb. 16, 2021) (*Final Determination*) (P.R. 480), and accompanying Issues and Decision Memorandum (IDM) (P.R. 473) at 19.[1] Under tier-three of the agency's benchmark hierarchy, because there is no government price for phosphate mining rights at which the rights were sold to compare with a market-based benchmark, Commerce conducted its benefit analysis not on mining rights *per se*, but on the value of the underlying good conveyed: phosphate rock. PDM at 12. OCP and Mosaic placed on the record worldwide phosphate rock benchmark *prices*

---

[1] "P.R." refers to the documents in the public record of the Final Determination, ECF No. 14-1, and "C.R." refers to the documents in the confidential record of the Final Determination, ECF No. 14-2. "P.R.R." refers to documents in the public record of the first remand, ECF No. 119-2, and "C.R.R" refers to documents in the confidential record of the first remand, ECF No. 119-3. "P.2.R.R." refers to documents in the public record of the second remand, ECF No. 149-3, and "C.2.R.R." refers to documents in the confidential record of the second remand, ECF No. 149-2.

and Commerce selected from that record data a world market price for phosphate rock which is inclusive of world profit.  *See* PDM at 2; *see also* Mosaic's Letter, "Petitioner's Submission of Factual Information to Measure the Adequacy of Remuneration and Other Factual Information," dated November 4, 2020 (Mosaic's Benchmark Data) (P.R. 256); and OCP's Letter, "New Factual Information," dated November 4, 2020 (OCP's Benchmark Data) (P.R. 335-337); IDM at 19-20.  Given the record contained no world cost or world profit data to isolate from world price, Commerce reasonably conducted a tier-three cost comparison by building up OCP's costs to an estimated OCP *price* based on OCP's profit and cost of production experience from the respondent's own financial records.  *See* IDM at 24-25, 27; Final Results of Remand Redetermination Pursuant to Court Order, ECF No. 115 (Jan. 12, 2024) (*First Remand Redetermination*) at 2.

> ### A.  Commerce's Tier-Three Benefit Analysis For The Provision Of Phosphate Mining Rights For LTAR Program Is Consistent With Law

By statute, a subsidy is countervailable when an authority has provided a financial contribution to a person, a benefit is thereby conferred, and a subsidy is specific.  *See* 19 U.S.C. § 1677(5)(A)-(B).  In considering whether a good has been provided "for less than adequate remuneration," and, thus, whether a benefit has been conferred, Commerce examines "prevailing market conditions for the good or service being provided," including "price, quality, availability, marketability, transportation, and other conditions of purchase of sale."  *See* 19 U.S.C. § 1677(5)(E)(iv).  Commerce measures the adequacy of remuneration, where possible, by comparing the respondent's actual price paid to the government for an input to an adjusted benchmark figure that represents the market price for the good at issue.  19 C.F.R. § 351.511(a)(2).  However, a tier-three analysis does not require Commerce to conduct any specific comparison, as it presumes that a government price paid by the respondent to market

3

price comparison is unavailable.  19 C.F.R. § 351.511(a)(2)(iii) (tier-three).  In this context, Commerce measures the adequacy of remuneration by examining whether the provision of goods or services under the program is consistent with market principles, including a common standard of cost recovery (plus a reasonable profit).  *See Countervailing Duties,* 63 Fed. Reg. 65,348, 65,378 (Dep't of Commerce Nov. 25, 1998) (final rule) (*CVD Preamble*).

For this comparative benefit analysis, Commerce's benchmark regulations provide a three-tiered hierarchal framework to identify a good's market price.  *See* 19 C.F.R. § 351.511 *et seq*.  As explained by the Federal Circuit, in accordance with the benchmark hierarchy, first, Commerce looks for "an actual transaction price in the country in question, which may, in some cases, include sales by competitively-run government auctions."  *Essar Steel Ltd. v. United States*, 678 F.3d 1268, 1273 (Fed. Cir. 2012) (citing § 351.511(a)(2)(i)).  If such a transaction does not exist, Commerce then looks for "a world market price for the goods in question."  *Id*. (citing § 351.511(a)(2)(ii)).  Commerce resorts to a tier-two benchmark, *i.e.*, a world market price for the input in question if "it is reasonable to conclude that such price would be available to purchasers in the country in question."  19 C.F.R. § 351.511(a)(2)(ii).  However, "{i}f there is no world market price available to purchasers in the country in question, {Commerce} will normally measure the adequacy of remuneration by assessing whether the government price is consistent with market principles."  19 C.F.R. § 351.511(a)(2)(iii).  "{I}f Commerce determines that government pricing is not consistent with market principles, then 'a benefit shall normally be treated as conferred.'"  *POSCO v. United States*, 977 F.3d 1369, 1372 (Fed. Cir. 2020) (quoting 19 U.S.C. § 1677(5)(E)(iv)).  Commerce selects an external or "tier three" benchmark to analyze the benefit amount.

4

Commerce analyzed the provision of phosphate mining rights for LTAR program under tier-three. PDM at 12; IDM at 19; *Second Remand Redetermination* at 8. Importantly, the government of Morocco (GOM) is the only provider of phosphate mining rights in Morocco and the rights are not traded domestically or internationally. PDM at 12. That is, there are no private, market-determined prices available for the phosphate ore mining rights in Morocco and there are, by nature, no world market prices available for mining rights to phosphate ore within Morocco (*i.e.*, the record does not contain any world market prices for phosphate ore mining rights that would be available to purchasers in Morocco). *Id.* As a result, Commerce found that neither tier-one nor tier-two benchmark prices were available. Accordingly, Commerce conducted its analysis under tier-three of the benchmark hierarchy consistent with the regulation. *Id.* No party has challenged Commerce's resort to a tier three analysis. IDM at 13-20.

Under tier-three, Commerce analyzed whether the price paid by OCP for the provision of phosphate mining rights is consistent with market principles. PDM at 12; 19 C.F.R. § 351.511(a)(2)(iii). Commerce assesses whether the government price was set in accordance with market principles "through an analysis of such factors as the government's price-setting philosophy, costs (including rates of return sufficient to ensure future operations), or possible price discrimination." *CVD Preamble*, 63 Fed. Reg. at 65,378. Under Moroccan law, OCP is the only company with the right to extract government-owned phosphate ore reserves in Morocco. PDM at 11. Notwithstanding its entitlement to this exclusive right, OCP does not pay any fees for the mining rights, *i.e.*, the government price is zero. *Id.*; IDM at 5, 20-27. Because there was no government price for mining rights to make a direct comparison under tier-three, Commerce calculated the benefit amount *not* on the mining rights *per se*, but on the value of the

underlying good conveyed to OCP via the mining rights: phosphate rock.[2]  PDM at 12; IDM at

23.  Commerce's methodology is consistent with the agency's approach to investigating mining

rights for LTAR in other cases.  *See* PDM at 12 (citing *Silicon Metal from Australia: Final*

*Affirmative Countervailing Duty Determination*, 83 Fed. Reg. 9,834 (Dep't of Commerce March

8, 2018), and *Cold-Rolled Steel from Russia: Final Affirmative Countervailing Duty*

*Determination*, 81 Fed. Reg. 49,935 (Dep't of Commerce July 29, 2016)); IDM at 23.

### 1.    Commerce Reasonably Selected A Tier-Three World Market Benchmark For Phosphate Rock From Record Information

To conduct the benefit analysis, Commerce reasonably selected a world market

benchmark for phosphate rock from among benchmark data placed on the record by parties.[3]

PDM at 12; IDM at 19-20.  Well-established law provides that parties bear the burden of

populating the record with relevant information to enable Commerce to make an accurate

determination.  *See QVD Food Co. v. United States*, 658 F.3d 1318, 1324 (Fed. Cir. 2011).

Further, although Commerce has the authority to place documents on the administrative record,

"the burden of creating an adequate record lies with interested parties and not with Commerce."

*Id.* (omitting internal quotations).  This Court has acknowledged that shifting the burden from

parties to Commerce would cause administrative deadlock and delays in the agency's

investigative proceedings.  *See e.g.*, *Kaptan Demir Çelik Endustrisi ve Ticaret AŞ*, 803 F. Supp.

---

[2] Although the subsidy is the provision of phosphate mining rights for LTAR, OCP has the right to mine phosphate ore, but there are no world market prices for phosphate ore on this record.  PDM at 12, n.81.  Thus, Commerce reasonably calculated the benefit for phosphate rock. *Id.* at 12.

[3] Notably, Commerce's use of a world market price for phosphate rock, here, *does not* fall within tier two of the benchmark hierarchy.  Under tier two, Commerce must use a world market price for the provision of mining rights "available to purchasers" in Morocco.  *See* 19 C.F.R. § 351.511(a)(2)(ii).  As stated above, such a price is not available.

3d 1276, 1289 (Ct. Int'l Trade 2025) ("{W}ithout the requirement that parties demonstrate the relevance of the factors they raise …, Commerce would be trapped—or at the very least, slowed—by spaghetti thrown at the wall."). For example, this Court has held that it is the respondent's responsibility to build the record with respect to information it deems necessary for Commerce to calculate benchmarks and that when it fails to do so, it bears the cost of its own failure. *Jiangsu Alcha Aluminum Co. v. United States*, 712 F. Supp. 3d 1376, 1393 (Ct. Int'l Trade 2024). Commerce relies on parties, who are experts in their various industries, to supply relevant information to inform the agency's determinations. *Id*. ("In every trade matter before Commerce, the record created by the parties determines the outcome."). Indeed, Commerce must base its decisions on the record before it. *Yama Ribbons v. United States*, 865 F. Supp. 2d 1294, 1253 (Ct. Int'l Trade 2012).

During the investigation, Mosaic and OCP placed benchmark data on the administrative record. *See* PDM at 2, 12; IDM at 19-20; *see also* 19 C.F.R. § 351.301(c)(3)(i). OCP and Mosaic chose to place worldwide phosphate rock benchmark prices on the record. *See* Mosaic's Benchmark Data (P.R. 256); OCP's Benchmark Data (P.R. 335-337); IDM at 19-20. Although the price of phosphate rock necessarily includes the cost of producing such rock and profit, benchmark information on the record does not contain disaggregated world cost of production or world profit data. From parties' benchmark data, Commerce selected a benchmark for phosphate rock based on an average of 2019 per-metric-ton prices for phosphate rock from various countries as reported by the CRU, Argus, Fertecon, and Profercy. *See* IDM at 19; Commerce Final Calculation Memo (C.R. 308) at Attachment I. No party contested Commerce's selection of a world market *price* benchmark for phosphate rock, rather than a world benchmark *cost*.

7

2.       **Commerce Reasonably Built Up OCP's Costs To An OCP Price For Its Comparative Benefit Analysis With The World Market Benchmark Price**

After selecting a world market price for its tier-three benefit analysis, Commerce developed an OCP price by building up OCP's costs plus a reasonable amount of profit to an OCP price for a direct apples-to-apples comparison with the world price based on record information.  Specifically, the record contains world prices, which are *inclusive* of world profit. IDM at 27.  However, as stated above, even though cost of production and profit are components of the world benchmark price of phosphate rock, the record does not contain segregated world cost information or world profit rates.[4]

The record, however, contains OCP's financial information including records pertaining to OCP's profit and OCP's cost of production for phosphate rock.  *Id*. (citing OCP's Letter, "Section III Questionnaire Response," dated September 17, 2020 (OCP's financial information) at Exhibit GEN-4(a)(iii)).  Based on this information, Commerce derived an OCP price of phosphate rock by building up OCP's cost of production and profit.  That price was then used to conduct a comparison with world market price.  *Id*.  Because both prices include costs and profit, Commerce's comparison of the world benchmark price of phosphate rock with OCP's constructed price of phosphate rock is an apples-to-apples comparison.  *Id*.

---

[4] In theory, a world *cost* benchmark might attain from a world benchmark price with record information containing world costs or a world profit rate.  In which case, either comparison approach would be available: (1) world cost benchmark to the respondent's cost, or (2) world price benchmark to the respondent's price (respondent's cost of production plus a reasonable amount of profit).  Neither approach is preordained.  Both approaches achieve an apples-to-apples comparison to estimate the benefit amount.  In this case, however, parties did not place segregated world cost information or world profit rates on the record.  So, Commerce reasonably chose to build up OCP's costs plus a reasonable amount of profit, based on OCP's own financial information, to an OCP price that could be compared to the world benchmark price.

When considering relevant costs in a cost buildup under tier three, neither 19 C.F.R. § 351.511(a)(2)(iii) nor the CVD preamble impose specific requirements or mandate a specific approach.  *See CVD Preamble*, 63 Fed. Reg. at 65,378.  In calculating OCP's cost of production, Commerce considered relevant OCP costs associated with producing its phosphate rock from ground minerals and the pricing of phosphate rock.  IDM at 24; *Second Remand Redetermination* at 8.  Commerce included direct and indirect expenses that OCP demonstrated related to mining, extraction and processing of phosphate ore in its accounting records maintained in the ordinary course of business.  *See* Preliminary Calculation Memorandum (C.R. 256) at 7-8; OCP Verification Response at 6-7 (P.R. 436; C.R. 289).  Commerce also added a profit component to the cost buildup.  This ensured an apples-to-apples comparison with the world price benchmark, which is inclusive of profit.  IDM at Comment 5; *id*. at 27.  Commerce also included an amount for overhead.  *See Second Remand Redetermination* at 8-17.  Thus, Commerce calculated OCP's actual per-unit cost of beneficiated phosphate rock using the respondent's own financial data and production experience.  *Second Remand Redetermination* at 17.  This is a reasonable way to construct the price of phosphate rock for OCP as these components are normally part of the price of any product.

With an OCP price and a world benchmark price, Commerce conducted an apples-to-apples tier-three comparative benefit analysis.  IDM at 27.  Specifically, Commerce calculated a benchmark price using "the actual per-unit cost buildup of OCP's beneficiated phosphate rock, inclusive of all taxes paid" to the GOM, plus what Commerce determined was a reasonable amount of per-unit profit, based on OCP's actual profit rate for the POI, and compared that price with "a world market price of comparable phosphate rock."  PDM at 12.  Commerce then multiplied the difference between these two prices, by the total amount of phosphate rock mined

and beneficiated by OCP during the period of investigation.  PDM at 12.  Again, Commerce's

cost buildup methodology results in a tier-three comparison of costs because both the OCP price

and world benchmark price include costs, based on the most reasonable and record-based

approach available, as the exact amount of world cost and profit is unavailable on the record.

### B.     Commerce's Tier-Three Benefit Analysis Is Reasonable

Commerce's tier-three benefit analysis is reasonable.  No alternative comparison

methodology is available because parties, who are responsible for populating the record with

benchmarking information, did not place world cost or world profit data on the record.  *See QVD*

*Food*, 658 F.3d at 1324; *see also Jiangsu*, 712 F. Supp. 3d at 1393.  Put simply, there is no

segregated world profit rate on the record for Commerce to deduct from the world price to

extract an exact world cost.

During oral argument, the Court suggested that the Jordanian JPMC profit rate could be

used as the world profit rate.  *See* Oral Argument Transcript (April 21, 2026) (Tr.) at 35, 72, 79.

However, a Jordanian company's profit rate is not reflective of the world such that it is an

appropriate value to deduct from world price to extract a reasonable world cost.  In fact, OCP

placed the Jordanian company's profit rate on the record as a proxy for its *own* profit rate—not

the *world* profit rate.[5]  Tr. at 10; IDM at 26 (citing OCP's Case Brief at 39).  OCP never argued

that Commerce should apply the JPMC profit rate to the world benchmark price.  OCP's Case

---

[5] The Court previously rejected the use of the JPMC profit rate for purposes of calculating a profit amount to be added to the OCP cost of production buildup.  *See Mosaic Co. v. United States*, 659 F. Supp. 3d 1285, 1303 (Ct. Int'l Trade 2023) ("While OCP advocates use of the JPMC surrogate profit rate based on a factor of specificity to phosphate rock production, that rate is inferior as to other factors, being derived from business conditions of a different company in a different country. Neither profit data set was perfect, but on this record OCP has not shown that it was unreasonable for Commerce to rely upon the data set specific to OCP's own business operations.").

Brief at 34-39 (Jan. 13, 2021) (P.R. 450; C.R. 301) (arguing that Commerce should use JPMC to calculate a profit rate to apply to OCP's constructed cost build-up).  Such an approach is fundamentally at odds with OCP's position during the administrative proceeding that the Jordanian rate is specific to OCP's experience.  OCP's experience does not belong on the world benchmark side of the comparison; the point of a tier-three analysis is to compare market benchmark conditions with the respondent's reality to identify the subsidy benefit.  19 C.F.R. § 351.511(a)(2)(iii).  A profit rate for a single Jordanian company is not reflective of the world.  No party has ever provided record information that suggests that the JPMC profit rate is representative of the world.  Thus, there is no basis on this record to equate the profit of the Jordanian company to the world profit.  Further, no record evidence indicates that deducting a Jordanian company's profit rate from the world price would result in a more accurate LTAR benefit analysis than that resulting from Commerce's OCP cost buildup methodology using OCP's own financial information.  Nor has any party made such a claim.

Ultimately, OCP received exclusive phosphate mining rights from the GOM for *free*, and Commerce applied a reasonable methodology based on available record information to estimate the benefit amount OCP received from the free, exclusive right to mine phosphate rock in Morocco.  Commerce's comparison of the world benchmark price and OCP's price results in a direct cost comparison under tier-three because both prices include costs and profit specific to the particular production experience, even if the precise proportion of world cost and world profit in the benchmark price is not on the record.  As stated above, it is the responsibility of the parties, not Commerce, to populate the record with relevant benchmark information.  Because the record lacks certain variables on each side of the LTAR benefit equation, Commerce's choice to build up OCP's costs to price based on OCP's own financial information is reasonable.

So long as Commerce's methodological approach is reasonable, the Court must sustain it. Mere preference for an alternative methodology is insufficient and does not render Commerce's approach unreasonable. *See Brit. Steel PLC v. United States*, 127 F.3d 1471, 1475 (Fed. Cir. 1997) ("{T}he Court of International Trade did not give proper deference to Commerce's repayment methodology. Instead of reviewing the methodology, the court impermissibly imposed its own interpretation of the statute by formulating an alternative test."). That the Court could "reach{} a different conclusion based on the same record," is not a sufficient basis to overturn an agency determination. *Cleo Inc. v. United States*, 501 F.3d 1291, 1296 (Fed. Cir. 2007).

Accordingly, Commerce reasonably analyzed the comparative benefit for the provision of phosphate mining rights for LTAR by conducting a tier-three analysis under 19 C.F.R. § 351.511(a)(2)(iii), creating an estimated price for OCP's beneficiated phosphate rock as proxy for the price paid for the mining rights and then comparing the estimated price for OCP's beneficiated phosphate rock with a world market benchmark price for comparable phosphate rock.

## II.      The Court Should Sustain Commerce's Methodology

The Court requested that parties propose how to bring this matter to an expeditious conclusion based on the current record. The United States respectfully proposes that the Court sustain Commerce's methodology not only because doing so provides the most expeditious conclusion of this matter based on the current record, but also because Commerce's methodology is supported by substantial evidence and in accordance with law. Because Commerce reasonably conducted a comparative benefit analysis for the provision of phosphate mining rights for LTAR

program under tier-three based on record benchmark data and OCP's own financial information, the Court should sustain Commerce's methodology.

Therefore, a remand is unnecessary.

## CONCLUSION

For these reasons, and those presented in Defendant's Response to Plaintiffs' Comments on Commerce's Remand Redetermination, ECF No. 160, this Court should sustain Commerce's second remand redetermination in its entirety and enter judgment in favor of the United States.

Respectfully submitted,

BRETT A. SHUMATE
ASSISTANT ATTORNEY GENERAL

PATRICIA M. McCARTHY
Director

s/ Tara K. Hogan
TARA K. HOGAN
Assistant Director

OF COUNSEL

LESLIE M. LEWIS
Attorney
Office of the Chief Counsel for Trade
    Enforcement & Compliance
U.S. Department of Commerce

s/ Kristin E. Olson
KRISTIN E. OLSON
Trial Attorney
U.S. Department of Justice
Civil Division
Commercial Litigation Branch
P.O. Box 480
Ben Franklin Station
Washington, D.C. 20044
Tel: (202) 307-6299
kristin.olson@usdoj.gov

June 4, 2026

*Attorneys for the United States*

13

THE UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE:  THE HONORABLE TIMOTHY C. STANCEU, SENIOR JUDGE

| | |
|---|---|
| THE MOSAIC COMPANY,<br><br>    Plaintiff,<br><br>  v.<br><br>THE UNITED STATES,<br><br>    Defendant,<br><br>   and<br><br>OCP, S.A.,<br><br>    Defendant-Intervenor. | Consol. Court No. 21-00116 |

ORDER

    Upon consideration of plaintiff's and defendant-intervenor's comments regarding the remand redetermination, defendant's response thereto, and all other pertinent papers, it is hereby

    ORDERED that the remand redetermination is sustained in its entirety; and further

    ORDERED that final judgment is entered in favor of the United States.

              _____

              Hon. Timothy C. Stanceu, Judge

Dated: _____